FILED

## IN THE UNITED STATES DISTRICT COURT JAN 10 PM 2:40
## MIDDLE DISTRICT OF FLORIDA
## ORLANDO DIVISION

CLERK, U.S. DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
ORLANDO, FLORIDA

THEORY3, INC.,
a Florida corporation,

        Plaintiff,

v.

BUZTRONICS, INC., an Indiana
corporation; ELECTROSTAR, INC.,
a subsidiary of Buztronics, Inc.; and
EDWARD LEWIS, an individual,

        Defendants.

_____/

Case No. 6:05CV45 ORL-28JGG

## COMPLAINT

Plaintiff THEORY3, INC. ("Theory3") hereby files this Complaint against Defendants BUZTRONICS, INC. ("Buztronics"), ELECTROSTAR, INC. ("Electrostar"), and EDWARD LEWIS (collectively referred to as "Defendants"), and states as follows:

## I.  PARTIES, JURISDICTION AND VENUE

1.  Plaintiff Theory3 is a corporation organized under the laws of the State of Florida, with its principal place of business in Orange County, Florida.

2.  Upon information and belief, Defendant Buztronics is a corporation organized under the laws of the State of Indiana, with a principal place of business in Marion County, Indiana.

3.  Upon information and belief, Defendant Electrostar is a subsidiary of Buztronics, with a principal place of business in Marion County, Indiana.

4.     Upon information and belief, Defendant Edward Lewis is a resident of Marion County, Indiana.  Upon information and belief Edward Lewis is a principal owner and officer of Buztronics and/or Electrostar and directed and controlled the actions of Buztronics and Electrostar as alleged herein.

5.     This is an action for patent infringement under the Patent Act, 35 U.S.C. § 281, trade dress infringement and unfair competition under the Lanham Act, 15 U.S.C. §1125, and for copyright infringement under the Copyright Act, 17 U.S.C. §501. Jurisdiction for these counts is conferred on this Court pursuant to 28 U.S.C. §§1331 and 1338.  This is also an action for trade secret misappropriation under Chapter 688 of the Florida Statutes, breach of fiduciary duty under Florida law, unfair competition under Florida law, and breach of contract under Florida law.  This Court has pendent jurisdiction over the state law claims.  The Court also enjoys jurisdiction over the state law claims pursuant to 28 U.S.C. §1332, as the parties are incorporated in different states and each count involves an amount in controversy greater than $75,000, exclusive of costs and interest.

6.     Defendants have committed the acts complained of herein in interstate commerce including within this judicial district and division.  Upon information and belief, Defendants offer for sale throughout the United States, including within this judicial district and division, LED products for automobiles, motorcycles and bicycles.  The promotion and sales activities are carried out through an internet web site, offers for sale, actual sales, advertisements and offers for sale at trade shows, not only throughout the United States but also within this judicial district and division.  Upon information and belief, the Defendants regularly conduct business within this judicial district and division, and otherwise have

sufficient minimum contacts with the State of Florida for this Court to exercise personal jurisdiction over all Defendants. Venue lies in this judicial district pursuant to 28 U.S.C. §1391.

## II.    BACKGROUND

### Theory3's Products At Issue

7.    In the late 1990's, the principals of Theory3, Daniel Deutsch, Jason Barber and Russell Rothan, invented a motion-activated LED device that can be attached to the valve stem of an automobile, motorcycle or bicycle tire, and which creates a stream of colored light as the wheel spins.

8.    In January of 2001, the inventors filed a patent application covering the invention. The application was assigned to Theory3, and subsequently issued as U.S. Patent No. 6,467,939 ("the '939 patent"). *See* U.S. Patent No. 6,467,939 attached as Exhibit A.

9.    Theory3 markets and sells its patented product in interstate commerce under the federally registered trademarks **TIREFLYS, TIREFLYS PRO**, and **TIREFLYS UV** . *See* **TIREFLYS** 2004 Catalog attached as Exhibit B and **TIREFLYS** 2005 Catalog attached as Exhibit C. In addition, all **TIREFLYS, TIREFLYS PRO**, and **TIREFLYS UV** product packaging displays the Theory3 trademark **LIGHTS FOR YOUR WHEELS**. *See e.g.*, copy of **TIREFLYS PRO** packaging attached as Exhibit D.

10.    Theory3 first introduced the patented products to the public in January of 2001, at the Consumer Electronics Show in Las Vegas, Nevada. Since their introduction in 2001, Theory3 has sold millions of its **TIREFLYS, TIREFLYS PRO**, and **TIREFLYS UV** products. The **TIREFLYS, TIREFLYS PRO**, and **TIREFLYS UV** products are sold in a

unique and highly distinctive packaging that serves to identify the products as originating

from Theory3. The commercial success of Theory3's **TIREFLYS, TIREFLYS PRO,** and

**TIREFLYS UV** products is due in part to their inherently distinctive, unique and innovative

packaging.

11.    The design of the **TIREFLYS PRO** product packaging (shown in Exhibit D)

was registered with the United States Copyright Office. On April 3, 2002, the United States

Copyright Office issued Theory3 certificate of copyright registration VA 1-113-780. *See*

Certificate of Copyright Registration attached as Exhibit E.

12.    In 2003, Theory3 developed a remote controlled LED lighting system for

automobiles with programmable effects and over 16 million colors. Theory3 markets and

sells this line of products under the trademark **COLORMORPHICS**. The

**COLORMORPHICS** trademark has been used in interstate commerce continuously since

2004. *See* **TIREFLYS** 2004 Catalog attached as Exhibit B, pages 2 through 5, and

**TIREFLYS** 2005 Catalog attached as Exhibit C, pages 1 through 5. **COLORMORPHICS**

products are sold in a unique and highly distinctive package that serves to identify the

products as originating from Theory3. *See id*. The commercial success of Theory3's

**COLORMORPHICS** products is due in part to their inherent distinctiveness, unique and

innovative product configuration and their distinctive, unique and innovative packaging.

13.    Theory3 has to date spent several million dollars promoting, marketing,

advertising and selling its **TIREFLYS** brand product lines, including **TIREFLYS,**

**TIREFLYS PRO, TIREFLYS UV** and **COLORMORPHICS** products. Theory3 markets

and sells its **TIREFLYS, TIREFLYS PRO, TIREFLYS UV** and **COLORMORPHICS**

products in large retail outlets such as Wal-Mart and Best Buy, as well as in smaller retail stores specializing in automotive, motorcycle and bicycle products, and through the Internet. *See e.g.* www.tireflys.com.

14.     Theory3 has spent hundreds of thousands of dollars on the development and placement of in-store displays. *See e.g.*, **TIREFLYS** 2004 Catalog attached as Exhibit B, page 11; **TIREFLYS** 2005 Catalog attached as Exhibit C, page 11. Theory3 has promoted and displayed its product lines at numerous trade shows, including the SEMA, CES and Interbike shows. Theory3's lines of products are extensively promoted on the Internet and have been featured on network television, in national magazines, and in nationally distributed newspapers such as the New York Times.

### Business Relationship Between Theory3 and Buztronics

15.     In 1999, Theory3 began searching for companies to assist in the manufacture and distribution of its **TIREFLYS** products as well as other products then in development, and commenced discussions with Buztronics.

16.     Upon information and belief, prior to its relationship with Theory3, Buztronics produced and sold primarily inexpensive novelty and promotional items such as pens and buttons that incorporate lights and sounds. Upon information and belief, none of the Defendants had developed or sold products for the automotive, motorcycle, or bicycle industries prior to becoming involved with Theory3.

17.     On February 14th, 2000, Buztronics signed a confidentiality and non-disclosure agreement to induce Theory3 to disclose its inventions as well as other confidential and proprietary information.   *See* Confidentiality and Non-Disclosure

Agreement attached as Exhibit F. Under the Confidentiality and Non-Disclosure Agreement, Buztronics promised to return all information provided by Theory3 upon termination of the parties' business, and "not use the confidential information for its own behalf." *See Id.*

18. Buztronics further agreed on or about February 14, 2000, through its then President Jim Sullivan, not to compete with Theory3 as to any products of Theory3.

19. Thereafter, the parties agreed that Buztronics would be the distributor of products for Theory3, and would further act as the liaison to the Chinese manufacturer, Allegro Electronics, Ltd. ("Allegro"), chosen to manufacture Theory3 products.

20. Upon information and belief, at all times relevant to the allegations in this Complaint, Defendant Edward Lewis was a principal owner of Buztronics and Electrostar and directed and controlled the actions of these entities as alleged in this Complaint, and derived a financial benefit therefrom.

21. Between 2000 and 2004, Theory3 developed and marketed a variety of original and unique products for the automobile, motorcycle and bicycle industries, including those described above and instructed all of its customers to submit purchase orders for these products to Buztronics, which agreed to fill those orders.

22. As the distributor of Theory3 products and the liaison with Allegro, Buztronics requested and was provided access to all of Theory3's highly confidential and valuable research and development information for its **TIREFLYS, TIREFLYS PRO, TIREFLYS UV, COLORMORPHICS** and other products, as well as Theory3's proprietary and confidential customer lists and marketing plans. Buztronics' position vis-à-vis Theory3, and its access to Theory3's highly confidential and proprietary information, made Buztronics

an agent of Theory3 with fiduciary duties and obligations to protect information disclosed in confidence and not misuse that information to the detriment of Theory3 or for Buztronics' own benefit.

23.     Until approximately August of 2004, Buztronics packaged and distributed Theory3's **TIREFLYS**, **TIREFLYS PRO**, **TIREFLYS UV** and **COLORMORPHICS** products with their respective notices of the patents, copyrights and trademarks.

24.     Between 2001 and 2004, Buztronics promoted itself in the relevant marketplace as the distributor of products sold under the **TIREFLYS** name and the Theory3 Patent. Buztronics used its position as the distributor of products under the **TIREFLYS** rubric and the '939 Patent as a calling card to sell its own products and the products of Electrostar.

### Dissolution of the Business Relationship Between Buztronics and Theory3

25.     In the spring of 2004, Theory3, in conjunction with Buztronics as distributor, reached an agreement with Best Buy, Inc. ("Best Buy"), according to which Best Buy would promote, sell, and install Theory3's **COLORMORPHICS** products at its stores. Best Buy also agreed to carry other Theory3 products in its stores, including **TIREFLYS**, **TIREFLYS PRO**, and **TIREFLYS UV** products.

26.     Just prior to the time the scheduled delivery of Theory3 products to Best Buy was to occur, Buztronics advised Theory3, without warning that Buztronics could not participate in the transaction. One of the reasons cited by Buztronics was that that it could not afford to manage such a large account.

27.     To meet its obligations to Best Buy, Theory3 was forced to enter into a rushed

dissolution agreement with Buztronics, which Buztronics prompted, and in which Buztronics expressly agreed, among other things, to cease using all intellectual property of Theory3 and to transfer its entire inventory of Theory3 products and components.   Theory3 agreed to purchase the inventory and assume certain debts of Buztronics.

28.   At the same time, Theory3 had to enter into a new agreement with Allegro concerning the production of Theory3 products.   Theory3 also entered into a rushed agreement with a new distributor so that it could meet its contractual delivery deadlines to customers.

### The Defendants' Scheme to Misappropriate and Infringe the Intellectual Property of Theory3, Compete Unfairly with Theory3, and Breach Duties and Obligations to Theory3

29.   Buztronics never disclosed its intention to put out its own line of copycat products that would compete directly with Theory3's **TIREFLYS, TIREFLYS PRO, TIREFLYS UV** and **COLORMORPHICS** products, among others, during the period it had fiduciary duties and obligations to Theory3 as its distributor, and had access to Theory3's confidential and proprietary information and trade secrets relating to current and future products, marketing strategies, pricing and cost information, financial data, and customer information.

30.   On information and belief, Electrostar is a subsidiary of Buztronics that develops, promotes and sells novelty and toy products to retail outlets.

31.   On information and belief, "Streetfx" and "Sparx" are divisions of Buztronics created in 2004 by the Defendants to produce and sell a new product line of automotive, motorcycle and bicycle accessories that are virtually identical to the products created,

developed, and sold by Theory3, and which were intended to displace Theory3's products in the marketplace. *See* Streetfx catalog, attached as Exhibit G; *See* Sparx catalog, attached as Exhibit H.

32.    Upon information and belief, neither Buztronics, Electrostar, nor their related companies or divisions had ever developed or sold lighting products or accessories for the automobile industry prior to their relationship with Theory3.

33.    The Defendants secretly created the knock-off Streetfx and Sparx product lines while Buztronics was the distributor of Theory3 products and the liaison to Theory3's manufacturer of all Theory3 products. The Defendants surreptitiously created and produced their Streetfx and Sparx product lines and marketing strategy using confidential, proprietary and trade secret information obtained through Buztronics' confidential and fiduciary relationship with Theory3.

34.    On information and belief, Buztronics and Edward Lewis misrepresented the financial condition of Buztronics to Theory3 to conceal the fact that funds were being diverted from meeting their obligations to Theory3 for use in secretly preparing knock-off product lines for market and induce Theory3 to enter into the rushed dissolution agreement.

35.    When the Defendants' copycat product line was ready for entry into the market, Buztronics and Edward Lewis fraudulently induced Theory3 to enter into a rushed dissolution agreement by purposefully omitting and concealing material facts as set forth herein. Buztronics and Edward Lewis <u>used pending deadlines</u> for delivery to Theory3 customers and held Theory3's own products hostage, for leverage in the dissolution.

36.    On August 24, 2004, within days of agreeing on the final terms of its

dissolution agreement with Theory3, the Defendants wrote to all the Theory3 customers to whom Buztronics had previously supplied Theory3 products, announcing that Buztronics was "extremely excited to present STREETFX." Under the terms of the dissolution agreement and the February 14, 2000 Confidentiality Agreement (Exhibit. F), Buztronics was to have turned over all of the customer information it maintained on customers who had purchased Theory3 products. Upon information and belief, Buztronics failed to transfer the complete customer database as it had agreed, but instead copied the information, and used this confidential and proprietary information for the benefit of the Defendants.

37.     In or around August of 2004, the Defendants launched websites, including without limitation www.streetfx.com and www.sparxonline.com, offering for sale product lines that were almost identical, product for product, to virtually the entire product line offered by Theory3. The Defendants also substantially copied Theory3's marketing strategy and product packaging.

38.     On information and belief, the Defendants used Theory3's trade secrets and confidential and proprietary information to create and produce most of the products offered under the Streetfx and Sparx lines. By misappropriating the research and development, marketing plans and materials, and other confidential information of Theory3, the Defendants were able to place their products on the market with substantial savings of time and financial resources, allowing them to undercut market prices and otherwise compete unfairly.

39.     Defendants are manufacturing, distributing and selling knock-offs of Theory3's **TIREFLYS, TIREFLYS PRO**, and **TIREFLYS UV** products under the names,

without limitation, "TireTechnix" and "TireSparx." *See* Streetfx catalog, attached as Exhibit G; *See* Sparx catalog, attached as Exhibit H.

40.     On information and belief, the Defendants' "TireTechnix" and "TireSparx" products infringe the valid and enforceable '939 Patent owned by Theory3.   Upon information and belief, the Defendants infringement of the '939 Patent is willful.

41.     Other valve stem light products on the market use different technology and have proven to be less commercially desirable for a variety of reasons.   The value of **TIREFLYS, TIREFLYS PRO**, and **TIREFLYS UV** products derives in part from the exclusive right to manufacture valve stem lights pursuant to the claims of the '939 Patent.

42.     The product packaging of Defendants' "TireTechnix" products infringes Theory3's copyright in the **TIREFLYS PRO** product packaging.   *See* Certificate of Copyright Registration, Exhibit E; *see* **TIREFLY PRO** packaging, attached as Exhibit D and a derivative package shown at Exhibit J; *see also* the **TIREFLY** 2004 catalog attached as Exhibit B, page 8, and **TIREFLYS** 2005 catalog Exhibit C, pages 8 and 9.   A representative example of the Defendants' infringing work is attached as Exhibit I. Theory3 registered its copyright in the packaging prior to the date the Defendants commenced infringement of that work.

43.     The Defendants' "TireTechnix" and "TireSparx" product packaging intentionally copies the unique and distinctive features of Theory3's well-known packaging for its **TIREFLYS, TIREFLYS PRO**, and **TIREFLYS UV** products. The Defendants' "TireTechnix" and "TireSparx" product packaging also incorporates the phrase "**Light Up Your Wheels**," which is confusingly similar to Theory3's mark **LIGHTS FOR YOUR**

**WHEELS,** which is used on all packaging for **TIREFLYS, TIREFLYS PRO**, and **TIREFLYS UV** products. *See e.g.*, Streetfx product package at Exhibit I and Tireflys Pro derivative package at Exhibit J. By misappropriating and using Theory3's distinctive packaging trade dress, Defendants are misrepresenting and falsely describing the origin and source of their knock-off merchandise to the general public, thereby creating a likelihood of confusion by the ultimate purchaser of the knock-off merchandise.

44.    Defendants are manufacturing, distributing and selling knock-offs of Theory3's **COLORMORPHICS** product, which the Defendants call "**ColorStorm.**" The ColorStorm product offered by the Defendants under the Streetfx brand is packaged and configured to look confusingly similar to Theory3's **COLORMORPHICS** system, and thereby misappropriate Theory3's goodwill and marketing and confuse consumers.

45.    Upon information and belief, the Defendants have misappropriated molds for components of the **COLORMORPHICS** products such as the mounting clips, which were developed and produced exclusively for Theory3. By misappropriating and using Theory3's molds, production techniques, and other research and development, the Defendants have been able to produce their knock-off products more quickly and with far less expense than would otherwise be required in developing new products from scratch, and thus allow them to unfairly compete.

46.    The Defendants are not authorized to make, use or sell the **TIREFLYS, TIREFLYS PRO, TIREFLYS UV** and **COLORMORPHICS** products, nor any product using Theory3's patents, copyrights, or trade secrets distinctive trade dress.

47.    On information and belief, purchasers of motion-activated lights for wheels

12

and related products, and purchasers of car lighting systems are <u>actually</u> being confused and deceived by the Defendants' use of confusingly similar trademarks and trade dress.

48.     Allowing Defendants to continue to sell their knock-off products developed using confidential, proprietary and trade secret information obtained through Buztronics' confidential and fiduciary relationship with Theory3, and to further infringe Theory3's intellectual property rights, will quickly destroy the market for Theory3's products.

**COUNT I**
**PATENT INFRINGEMENT**
**35 U.S.C. §271**

49.     Theory3 repeats and realleges paragraphs 1 through 48 of this Complaint.

50.     Count I is an action by Theory3 against Defendants for monetary damages and injunctive relief for Defendants' infringement of Theory3's U.S. Patent No. 6,467,939 (the "'939 Patent"). See U.S. Patent No. 6,467,939 attached as Exhibit A.

51.     Defendants are advertising, manufacturing, offering for sale, selling and/or distributing motion activated valve stem lights for automobile, motorcycle and bicycle wheels which infringe either directly, by inducement or contributorily one or more claims of the '939 Patent.

52.     The infringing activities of Defendants are without authorization.

53.     Theory3 is entitled to compensatory damages and injunctive relief for Defendants' infringing activities.

54.     Upon information and belief, the activities of Defendants are without justifiable belief that there is no infringement, or that the infringed claims are invalid. Therefore, Theory3 is entitled to an award of treble damages, attorney's fees and costs of this

action.

## COUNT II
## COPYRIGHT INFRINGEMENT
## 17 U.S.C. §501

55.     Theory3 repeats and realleges paragraphs 1 through 48 of this Complaint as though fully set forth herein.

56.     This cause of action for copyright infringement arises under 17 U.S.C. §501.

57.     Theory3 is the owner of all rights of copyright in and to the wording and artwork comprising Theory3's **TIREFLYS PRO** product package (the "Copyrighted Work"). A true copy of the Copyrighted Work is attached as Exhibit D.

58.     Theory3 is also the owner of all rights of copyright in and to the wording and artwork comprising Theory3's **TIREFLYS PRO** derivative product package (the "Derivative Work"). A true copy of the Derivative Work is attached as Exhibit J.

59.     The Copyrighted Work is registered in the United States Copyright Office, with Theory3 as the owner thereof. *See* Certificate of Copyright Registration Exhibit E.

60.     The Defendants had access to Theory3's Copyrighted Work and Derivative Work. Prior to August of 2004, Buztronics was solely responsible for packaging all of the Theory3 products, including **TIREFLYS PRO** products.

61.     The front and back sides of the Defendants' "TireTechnix" product packaging are substantially similar to the front and back of Theory3's Copyrighted Work and Derivative Work.

62.     The line drawing illustrations that appear on the Defendants' product package

14

are substantially similar to the illustrations that appear on Theory3's Copyrighted Work and Derivative Work.

63.     Defendants have intentionally and willfully distributed and displayed works that are substantially similar to Theory3's Copyrighted Work and Derivative Work.  Upon information and belief, Defendants copied the Copyrighted Work and Derivative Work and/or created an unauthorized derivative work thereof.

64.     Defendants' infringement of Theory3's Copyrighted Work and Derivative Work is "willful" within 17 U.S.C. §504(c)(2).  At all times relevant, and upon information and belief, Defendants were aware of, and had reason to believe that their acts constituted infringement of Theory3's Copyrighted Work and Derivative Work.

65.     Defendants' aforesaid acts are in violation of 17 U.S.C. §501 in that Defendants are copying and/or creating unauthorized derivative works of Theory3's Copyrighted Work and Derivative Work, are selling the knock-off merchandise, and are deriving revenue and profits attributable to their infringement of Theory3's Copyrighted Work and Derivative Work.

66.     Theory3 has no adequate remedy at law if Defendants' activities are not enjoined by this Court, and will suffer irreparable harm and injury as a result.

67.     As a result of Defendants' activities, Theory3 is being damaged in an amount not yet ascertainable, but upon information and belief, is in excess of $75,000.  Since the Defendants' acts of infringement commenced after Theory3's registration of the copyrighted works, Theory3 is entitled to elect an award of statutory damages of up to $150,000.

## COUNT III
## TRADE DRESS INFRINGEMENT

## 15 U.S.C. §1125(a)

68.    Theory3 repeats and realleges paragraphs 1 through 48 of this Complaint as though fully set forth herein.

69.    This cause of action for trade dress infringement arises under 15 U.S.C.§1125(a) as a result of Defendants' misappropriation of the distinctive product configuration and packaging of Theory3's **COLORMORPHICS** systems in a way that is likely to cause confusion.

70.    Theory3 has invested hundreds of hours and tens of thousands of dollars in design expenses prototyping the design, shape and configuration of its **COLORMORPHICS** systems and the distinctive packaging. During this process, Theory3 considered many different configurations for the product's design and many packaging designs, but chose the current configuration and design because of their distinctive look.

71.    This **COLORMORPHICS** system's configuration and packaging are inherently distinctive and non-functional, and serve to identify Theory3 as the source of its innovative system.

72.    The design of Theory3's **COLORMORPHICS** system and its packaging has acquired secondary meaning as a result of Theory3's substantial marketing efforts and extensive promotion of the **COLORMORPHICS** system at retail stores, at trade shows, and on the Internet. For example, Theory3 invested more than $100,000 just in creating in-store displays for Best Buy, which vividly places the product in front of consumers.

73.    Buztronics' Colorstorm systems are an inferior copy of Theory3's **COLORMORPHICS** system, and, on information and belief, contain components made

from molds developed exclusively for Theory3.   A comparison of Theory3's **COLORMORPHICS** system and packaging and Defendants' Colorstorm System and packaging is shown in the two companies' product manuals, attached as Exhibits K and L, as well as in the companies' respective catalogs attached as Exhibits B, C, and G.

74.    Defendants' activities are without the permission of Theory3.

75.    Defendants' aforesaid acts are in violation of 15 U.S.C. §1125(a), in that Defendants have and will continue to infringe Theory3's distinctive product configuration and packaging trade dress by selling knock-off merchandise bearing Theory3's distinctive trade dress, and Defendants' acts are likely to cause consumer confusion, mistake or deception.

76.    Theory3 has no adequate remedy at law.  If Defendants' activities are not immediately enjoined, Theory3 will suffer irreparable harm and injury as a result thereof.

77.    Upon information and belief, Defendants' acts are willful, wanton, intentional and malicious and have damaged Theory3, making this case exceptional.

78.    As a result of Defendants' unlawful activities, Theory3 is being damaged in an amount not yet ascertainable, but upon information and belief, is in excess of $75,000.

**COUNT IV**
**TRADE DRESS INFRINGEMENT - PACKAGING**
**VIOLATION OF 15 U.S.C. §1125(a)**

79.    Theory3 repeats and realleges paragraphs 1 through 48 of this Complaint as though fully set forth herein.

80.    This cause of action for trade dress infringement arises under 15 U.S.C.

§1125(a) as a result of Defendants' selling knock-off merchandise in packaging that is virtually identical to Theory3's **TIREFLYS PRO** distinctive product package. *See* **TIREFLYS PRO** packaging at Exhibit D and Exhibit J; *see* **TIREFLYS** 2004 catalog, Exhibit. B, page 9; and **TIREFLYS** 2005 Catalog attached as Exhibit C, page 8 and 9. See Defendants' packaging at Exhibit G and Exhibit. I.

81.     The **TIREFLYS PRO** product package (Exhibit. J) is a blister pack that is brilliantly colored and artistically designed. The package background is a vibrant shade of blue/purple. There is a large picture of a wheel in motion superimposed on the left side of the packaged. The package boldly reads: "Try Me!"; "Tap"; and "Lights for your wheels." These features are placed around the product so that maximum attention is focused on the unique features of both the product and package. The back of the **TIREFLYS PRO** package is also artfully designed, and features stylized lettering and line drawings. There is a line drawing of a hand exhibiting the product next to a wheel on the middle left portion. In addition, the right middle portion of the back of the package features a line drawing of the product disassembled and labeled. The entire package is large, relative to the size of the product. *See* **TIREFLYS PRO** package at Exhibit J. The dimensions of the product package are 5 inches in width and 7 inches in length.

82.     This package is inherently distinctive, unique and non-functional, and serves to identify Theory3 as the single source for lights for wheels.

83.     Theory3's product package has gained secondary meaning and acquired distinctiveness as a result of Theory3's substantial marketing efforts, and the extensive promotion of the **TIREFLYS**, **TIREFLYS PRO**, and **TIREFLYS PRO UV** devices

displaying this packaging at retail stores, at trade shows, on the Internet and on network television and in print.

84.   Theory3's product package for its **TIREFLYS PRO** devices is conceptually separable from its **TIREFLYS PRO** devices.

85.   The Defendants sell products including, without limitation, their TireTechnix product, in packaging that is virtually identical to Theory3's packaging for its **TIREFLYS PRO** devices. *See* Exhibit. I. The Defendants could have selected any number of different color schemes for their package, which, in turn, could have taken any shape, size or arrangement. However, like Theory3, Defendants sell their devices in a 5 inch by 7 inch blister pack with a blue/purple background and a large picture of a wheel in motion superimposed on the left side of the package. The size and shape of the blister pack is the exact same size and shape as Theory3's package. Moreover, the Defendants' product is placed in the package in exactly the same location as the Theory3 product. The Defendants' package boldly reads: "Try Me!;" "Tap;" and "Light up your wheels." The phrase "Light up your wheels" on Defendants' package is confusingly similar to the Theory3 trademark "Lights for your wheels" and is believed to have been chosen to confuse and deceive the public. The back of the Defendants' package features line drawings and stylized lettering that are substantially similar to those on the back of Theory3's package in appearance and location.

86.   Defendants' activities are without the permission of Theory3.

87.   Defendants' aforesaid acts are in violation of 15 U.S.C. §1125(a), in that Defendants have and will continue to infringe Theory3's distinctive trade dress by selling

knock-off merchandise in packaging that is virtually identical to Theory3's.

88.    Theory3 has no adequate remedy at law if Defendants' activities are not enjoined by this Court and will suffer irreparable harm and injury as a result.

89.    Upon information and belief, Defendants' acts are willful, wanton, intentional and malicious and have damaged Theory3, making this case exceptional.

90.    As a result of Defendants' activities, Theory3 is being damaged in an amount not yet ascertainable, but upon information and belief, in an amount in excess of $75,000.

## COUNT V
## ACTION UNDER CHAPTER 688, FLA. STATS., FOR MISAPPROPRIATION OF TRADE SECRETS

91.    This Count Five is an action by Theory3 against all of the Defendants for misappropriation of Theory3's trade secrets, in violation of the provisions of Chapter 688, Florida Statutes.

92.    Theory3 here restates and incorporates by reference into this Count Five the allegations of 1 through 48 above, inclusive.

93.    Theory3's proprietary information, including Theory3's customer information, product research information, product development information, product production specifications and molds, and product marketing strategy constitute trade secrets within the meaning of 688.002(4), Fla. Stat.

94.    Theory3's proprietary information derives economic value from not being generally known to, and not being readily ascertainable by, proper means by other persons (such as Defendants) who may be able to obtain economic value from its disclosure or use.

95.    Theory3's proprietary information has been the subject of efforts that are

reasonable under the circumstances to maintain the secrecy of that information.

96.     Among the steps taken to maintain Theory3's proprietary information in secrecy are (a) restricting access to its facilities, (b) restricting access to its computerized databases, and (c) advising its employees and agents of the need to maintain the information in confidence, (d) requiring confidentiality and non-disclosure agreements such as the one executed by Buztronics prior to being provided access to proprietary and confidential information.

97.     Without Theory3's authorization, the Defendants have misappropriated Theory3's trade secrets for their own use and benefit to Theory3's detriment.

98.     Theory3 has suffered a compensable injury by reason of Defendants' misappropriation of trade secrets as outlined in this Count Five, and will continue to suffer an irreparable injury unless Defendants' conduct is preliminarily and then permanently enjoined.

99.     Upon information and belief, the conduct of the Defendants as outlined in this Count Five was engaged in with a willful, wanton or reckless disregard for Theory3's rights, so as to justify an award of exemplary damages under 688.004(2), Fla. Stat., and attorney's fees under 688.005, Fla. Stat.

100.     As a result of Defendants' activities, Theory3 is being damaged in an amount not yet ascertainable, but upon information and belief, in an amount in excess of $75,000.

## COUNT VI
## FLORIDA COMMON LAW UNFAIR COMPETITION

101.     Theory3 repeats and realleges paragraphs 1 through 48 of this Complaint as though fully set forth herein.

102.    By misappropriating Theory3's patented technology, copyrighted works, product trade dress, trademarks and other intellectual property for use on knock-off merchandise, Defendants have utilized unfair means to usurp the good will and distinctiveness of Theory3's trade dress.

103.    Defendants are misappropriating and falsely describing to the general public the origin and source of the knock-off merchandise so as to cause confusion and mistake by the ultimate purchaser as to the source and origin of their knock-off merchandise.

104.    On information and belief, Buztronics has falsely claimed, in bad faith, that the '939 patent is invalid to customers of Theory3. Theory3 has made these statements to the marketplace without any credible evidence of the truth thereof. The Defendants have made these statements in an effort to compete unfairly with Theory3.

105.    Upon information and belief, the Defendants have misappropriated molds for components of the **COLORMORPHICS** products such as the mounting clips, which were developed and produced exclusively for Theory3. By misappropriating and using Theory3's molds, production techniques, and other research and development, the Defendants have been able to produce their knock-off products with greater speed and with less expense than would otherwise be required in developing new products from scratch, and thus allow them to unfairly compete.

106.    Theory3 has no adequate remedy at law if Defendants' activities are not enjoined by this Court, and Theory3 is suffering irreparable harm and injury to its reputation as a result thereof.

107.    Upon information and belief, Defendants' acts are willful, wanton, intentional

and malicious.

108.    As a result of Defendants' activities, Theory3 is being damaged in an amount not yet ascertainable, but upon information and belief, in an amount in excess of $75,000.

## COUNT VII
## BREACH OF FIDUCIARY DUTY
### (Against Buztronics and Edward Lewis)

109.    Theory3 repeats and realleges paragraphs 1 through 48 of this Complaint as though fully set forth herein.

110.    As the distributor of Theory3 products and the liaison with Allegro, Buztronics (and its principal Edward Lewis) requested and was provided access to all of Theory3's highly confidential and valuable research and development information and materials for its **TIREFLYS, TIREFLYS PRO, TIREFLYS UV, COLORMORPHICS** and other products, as well as Theory3's proprietary and confidential customer lists and marketing plans. As part of their work for Theory3, Buztronics and Edward Lewis received broad access to virtually all aspects of that business, including Theory3's confidential and proprietary business plans, finances, costs, manufacturing, methods, molds for component and products, and other confidential and/or proprietary business and technical information and documents. Buztronics and Edward Lewis also received and/or had access to Theory3's confidential designs, drawings, and prototypes.

111.    Buztronics and Edward Lewis' position and level of access to highly confidential and proprietary information made them agents of Theory3, with fiduciary duties and obligations to protect information disclosed and not misuse that information to the detriment of Theory3 or for their own benefit.

112.    Buztronics and Edward Lewis breached their fiduciary duties owed toTheory3. They did so by, among other things, misappropriating Theory3's property for their own benefit, and providing that same property to and for the benefit of Electrostar. Defendants are now wrongfully using that information to promote and sell their line of competing products under the Streetfx and Sparx names, including without limitation, the Colorstorm system, TireTechnix, and TireSparx products.

113.    Defendants are causing injury to Theory3 in Florida by their acts and omissions.

114.    Upon information and belief, Defendants have acted with actual malice.

115.    Theory3 has suffered and continues to suffer in Florida and elsewhere damages as a direct and proximate result of Defendants' conduct, in an amount to be determined at trial.

116.    As a result of Buztronics and Edward Lewis' activities, Theory3 is being damaged in an amount not yet ascertainable, but upon information and belief, in an amount in excess of $75,000.

### COUNT VIII
### BREACH OF CONFIDENTIALITY AGREEMENT
### (Against Buztronics)

117.    Theory3 repeats and realleges paragraphs 1 through 48 of this Complaint as though fully set forth herein.

118.    On February 14th, 2000, Buztronics signed a Confidentiality and Non-Disclosure Agreement to induce Theory3 to disclose its inventions, as well as other confidential and proprietary information. *See* Confidentiality and Non-Disclosure

Agreement, attached as Exhibit F ("the Confidentiality Agreement").

119.   Under the Confidentiality and Non-Disclosure Agreement, Buztronics promised to return all information provided by Theory3 upon the termination of the parties' business, and "not use the confidential information for its own behalf." *See* Confidentiality and Non-Disclosure Agreement, Exhibit. F.

120.   Buztronics breached its confidentiality agreement with Theory3 by, among other things, misusing and misappropriating Theory3's confidential and proprietary information for their own benefit and for the benefit of others, including Electrostar and Edward Lewis.

121.   Buztronics' breaches occurred against Theory3 in Florida and have resulted in substantial injury to Theory3 in Florida.

122.   Theory3 has suffered and continues to suffer in Florida and elsewhere damages as a direct and proximate result of Defendants' conduct, in an amount to be determined at trial.

123.   As a result of Buztronics' activities, Theory3 is being damaged in an amount not yet ascertainable, but upon information and belief, in an amount in excess of $75,000.

WHEREFORE, Theory3 respectfully prays that this Court grant the following relief:

1.   That the Court issue a preliminary injunction, and ultimately a permanent injunction, restraining, enjoining and prohibiting Defendants and anyone in connection with them from:

(1)   making, using, selling, distributing, advertising or promoting, in any manner, devices that infringe Theory3's '939 Patent, including without

limitation, the Defendants' motion activated wheel lights sold under the names TireTechnix and TireSparx;

(2)     making, using, selling, distributing, advertising or promoting, in any manner, devices that are deceptively similar in configuration to Theory3's **COLORMORPHICS** devices, including, without limitation, the current product configuration of Defendants' Colorstorm systems;

(3)     making, using, selling, distributing, advertising or promoting, in any manner, packaging and labeling that is deceptively similar to the packaging and labeling used by Theory3 in connection with its **TIREFLYS, TIREFLYS PRO, TIREFLYS UV,** or **COLORMORPHICS** devices, including without limitation, the current packaging for Defendants' motion activated wheel lights sold under the name TireTechnix;

(4)     infringing Theory3's Copyrighted Work, including the direct or indirect copying, manufacturing, displaying, vending, distributing, selling, promoting, advertising, using or disposing of, in any manner, Theory3's Copyrighted Work, or any derivative works thereof, and any copyrightable subject matter owned by Theory3;

(5)     further infringing Theory3's protectable trade dress; and

(6)     transferring, disposing of, or secreting any money, stocks, or other assets of Defendants, without prior approval of the Court.

(7)    in the alternative, Theory3 requests this Court order that the profits from sales of Defendants' motion-activated wheel lights and ColorStorm Systems be placed in a constructive trust pending the outcome of this action.

2.    An award of damages under 35 U.S.C. §284 in an amount adequate to compensate Theory3 for Defendants' patent infringement, but in no event less than a reasonable royalty for the use made by Defendants of the invention set forth in the '939 Patent;

3.    An award of damages pursuant to 15 U.S.C. §1117.

4.    An award of compensatory damages, exemplary damages, and attorney's fees Pursuant to Chapter 688 of the Florida Statutes.

5.    Under Counts Six and Seven, an award of compensatory damages.

6.    Under Count Seven, an award of punitive damages.

7.    For increased damages under 35 U.S.C. §284 and 15 U.S.C. §1117(a), and for Theory3s' reasonable attorney fees pursuant to 35 U.S.C. §285, 15 U.S.C. §1117(a), and 17 U.S.C. §505.

8.    An Order requiring Defendants to impound and recall all infringing products from manufacturers, wholesale and retail sellers, intermediaries, and distributors, and to deliver them to Theory3 or its counsel;

9.    That all other materials, packaging, products, and tools relating to Defendants' motion-activated wheel lights sold under the name TireTechnix, including all means of producing the same, be delivered to Theory3 or its counsel, as this Court shall direct, pursuant to 17 U.S.C. §§503 and 509.

10.    Copyright damages measured by the actual damages suffered by Theory3 as a result of Defendants' infringement of the Copyrighted Work, and profits derived by Defendants from their infringement of the Copyrighted Work; or

12.    That Defendants be required to provide an accounting of their financial records to determine the amount of their profits and other unjust enrichment sums attributable to their unlawful acts.

13.    That the Court order judgment for three times Defendants' profits or three times the damages suffered by Theory3, whichever is greater, punitive or exemplary damages, and reasonable attorneys fees and the costs of the action;

14.    That the Court order Defendants to file a report with this Court within thirty (30) days setting forth in detail the manner and form in which Defendants have complied with its Order;

15.    An award of costs and attorneys' fees; and

16.    Such other and further relief, which this Court deems just and proper.

## **JURY DEMAND**

Theory3 hereby demands a trial by jury for all claims so triable.

Respectfully submitted,


_____
Ava K. Doppelt
Florida Bar No. 393738
Jeffrey S. Boyles
Florida Bar No. 722308
**Allen, Dyer, Doppelt, Milbrath**
**& Gilchrist, P.A.**
255 South Orange Avenue, Suite 1401
Orlando, FL 32801

Telephone: 407/841-2330
Facsimile: 407/841-2343
adoppelt@addmg.com
jboyles@addmg.com